UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELMA RODRIGUEZ,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,<br><br>　　　　Defendant. | Case No. ED CV 13-1199-SP<br><br><br>MEMORANDUM OPINION AND ORDER |

**I.**

**INTRODUCTION**

On July 5, 2013, plaintiff Delma Rodriguez filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents three disputed issues for decision: (1) whether the Administrative Law Judge ("ALJ") properly considered the opinion of treating physician Dr. Jane Li; (2) whether the ALJ properly rejected the opinion of examining physician Dr. Nicholas Lin regarding pulmonary irritants; and (3) whether the ALJ's residual functional capacity ("RFC") determination, in particular concerning plaintiff's left wrist, was supported by substantial evidence. Memorandum in Support of Complaint ("P. Mem.") at 3-11; Defendant's Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-9.

Having carefully studied, inter alia, the parties's moving papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ failed to address Dr. Li's opinion and improperly rejected Dr. Lin's opinion regarding pulmonary irritants. The remainder of the ALJ's RFC determination is supported by substantial evidence. Therefore, the court remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was forty-five years old on her alleged disability onset date, completed school through the sixth grade. AR at 52, 291. Plaintiff has past relevant work as an order puller or warehouse worker. *Id*. at 109.

On October 26, 2006, plaintiff filed an application for a period of disability and DIB due to dislocated discs, a left hand problem, pain in the left leg and foot, and arthritis in the hands. *Id*. at 291, 296, 328. The Commissioner denied plaintiff's application initially and upon reconsideration, after which she filed a request for a hearing. *Id*. at 136-47.

On September 18, 2008, plaintiff, represented by counsel, appeared and testified at a hearing before ALJ Lowell Fortune. *Id*. at 45-70. ALJ Fortune also

heard testimony from Ernesto Gutierrez, plaintiff's husband. *Id.* at 58-67. On November 10, 2008, plaintiff testified at a supplemental hearing. *Id.* at 71-87. Sandra Fioretti, a vocational expert, also provided testimony. *Id.* at 82-86. On February 2, 2009, ALJ Fortune denied plaintiff's claim for benefits. *Id*. at 118-31.

Plaintiff filed a request for review, which the Appeals Council ("AC") granted. *Id*. at 133. On May 4, 2011, the AC vacated the February 2009 decision on the ground that the ALJ erred at step four by finding that plaintiff had past relevant work as a teller, and ordered the ALJ on remand to consider new evidence of plaintiff's physical and mental impairments and conduct further evaluation at step four. *Id.* at 133-35.

On August 29, 2011, plaintiff appeared and testified at a hearing before a new ALJ, Tamara Turner-Jones. *Id*. at 88-112. The ALJ also heard testimony from Troy Scott, a vocational expert. *Id.* at 108-12. On January 26, 2012, the ALJ denied plaintiff's claim for benefits. *Id*. at 20-37.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity from October 4, 2004, the alleged onset date, through December 31, 2009, the date last insured ("DLI"). *Id.* at 23.

At step two, the ALJ found that plaintiff suffered from the following severe impairments: asthma; migraines; sinusitis; osteoarthritis of the cervical and lumbar spine; major depressive disorder; and generalized anxiety disorder. *Id*.

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.*

The ALJ then assessed plaintiff's RFC,[1] and determined that she had the RFC to perform light work with the following limitations, that plaintiff: could lift/carry 20 pounds occasionally and 10 pounds frequently; could stand/walk six hours out of an eight-hour workday with regular breaks; could sit six hours out of an eight-hour workday with regular breaks; needed to alternate positions at one-hour intervals for one to five minutes at her workstation; could occasionally kneel, stoop, crawl, crouch, and climb ramps and stairs; could never climb ladders, ropes, or scaffolds; could frequently use the left non-dominant hand for gross and fine manipulations; and required a workplace free of fast paced production requirements or assembly line work. *Id.* at 24.  In addition, plaintiff should avoid: exposure to unprotected heights and dangerous moving machinery; concentrated exposure to pulmonary irritants such as dusts, fumes, gasses, and odors; and prolonged exposure to bright or glaring sunlight or frequent blinking lights. *Id.*

The ALJ found, at step four, that plaintiff was incapable of performing her past relevant work as an order puller/warehouse worker through the date last insured. *Id*. at 36.

At step five, taking into consideration plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that plaintiff could have performed during the insured period, including electronics worker, packing machine operator, and house cleaner. *Id.* at 36-37.  Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 37.

---

[1]  Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the AC. *Id.* at 5-7. The ALJ's decision stands as the final decision of the Commissioner.

## III.
## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.

1992)).

## IV.

## DISCUSSION

**A.    The ALJ Must Consider the Opinion of Treating Physician Dr. Jane Li**

Plaintiff argues that the ALJ improperly failed to acknowledge the opinion of her treating physician Dr. Jane Li, and failed to provide specific and legitimate reasons for rejecting it.  P. Mem. at 3-7.  Specifically, plaintiff contends that the ALJ was obligated to consider Dr. Li's opinion, which was relevant even though it was rendered after the date last insured.  *Id.*

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence.  20 C.F.R. § 404.1527(b).  In evaluating medical opinions, the regulations distinguish among three types of physicians:  (1) treating physicians; (2) examining physicians; and (3) non-examining physicians.  20 C.F.R. § 404.1527(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)(1)-(2).  The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant.  *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician.  *Smolen*, 80 F.3d at 1285.  If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight.  *Lester*, 81 F.3d at 830.  If the treating physician's opinion is contradicted by other

opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* at 830. Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1067 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

  Dr. Li, a psychiatrist, treated plaintiff from September 6, 2010 through at least July 8, 2011. *See id.* at 1016-26. Dr. Li diagnosed plaintiff with major depressive disorder and generalized anxiety disorder, and met with her about once a month. *See id.* On June 17, 2011, Dr. Li completed a Mental Impairment Questionnaire, in which she noted that plaintiff had the following symptoms: sleep disturbance, mood disturbance, emotional lability, recurrent panic attacks, social withdrawal or isolation, decreased energy, pervasive loss of interests, and generalized persistent anxiety. *Id.* at 1007-10. Dr. Li opined that plaintiff would have difficulty working at a regular job and her impairments would cause her to be absent from work more than three times a month. *Id.* at 1009-10. Dr. Li also opined that plaintiff would have moderate difficulties in maintaining social functioning; often have deficiencies of concentration, persistence, or pace; and would have repeated episodes of deterioration or decompensation in work settings. *Id.* at 1010.

  The ALJ did not address Dr. Li's opinion in her decision. The ALJ stated she had "read and considered all the medical evidence herein, however, only the records from the relevant time are summarized." *Id.* at 27.

  Defendant argues that the ALJ's failure to address Dr. Li's opinion was not in error because the opinion was irrelevant due to the fact that her treatment and

opinion were rendered after plaintiff's date last insured. D. Mem. at 3-4. Defendant also argues that, in any event, any error was harmless because there is a lack of objective evidence from the insured period to support the opinion. *Id.* In general, however, "'medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition.'" *Taylor v. Comm'r*, 659 F.3d 1228, 1232 (9th Cir. 2011) (citation omitted) (finding that the ALJ must consider medical opinions relevant to the insured period); *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988). An evaluation made after the insured period may shed light on the severity and existence of the impairment during the insured period. *See Smith*, 849 F.2d at 1225-26. Accordingly, the ALJ erred when she failed to even address Dr. Li's opinion.

The question then is whether the ALJ's error was harmless. In order for the court to conclude that the ALJ's error was harmless, the court must be able to "confidently conclude that no reasonable ALJ, when fully crediting [Dr. Li's] testimony, could have reached a different disability determination." *See Stout v. Comm'r*, 454 F.3d 1050, 1056 (9th Cir. 2006) (discussing an ALJ's failure to discuss lay testimony). This court cannot.

Defendant correctly recognizes that Dr. Li's opinion did not appear to concern the relevant time period. Dr. Li did not begin to treat plaintiff until nine months after the date last insured and rendered her opinion eighteen months after the date last insured. *See* AR at 1007-10, 1026. In the Mental Impairment Questionnaire, Dr. Li did not offer an opinion as to when plaintiff's mental impairments purportedly began. *See Taylor*, 659 F.3d at 1232-33 (remanding a decision that failed to consider a post-DLI opinion that related to the insured period). Nor do the treatment notes reflect any findings that suggest plaintiff's alleged mental impairments in 2010 and 2011 related back to the insured period. *See Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (the ALJ properly

rejected a post-insured period opinion that was not substantiated by medical evidence from the relevant period); *Magallanes v. Bowen*, 881 F.2d 747, 754 (9th Cir. 1989) (same).  Other than plaintiff reporting that she had been depressed for two years during the initial examination, the treatment notes did not reference any time period but the present.  *See* AR at 1016-28.

Had Dr. Li's notes and unspecific opinion been the only evidence of plaintiff's mental impairment, the court would agree that the ALJ's error was harmless.  But here, plaintiff's medical record contains multiple references to depression and anxiety from the insured period.  In September 2007, plaintiff first reported to her primary care physician, Dr. Daniel Franco, that she felt anxious.  *See id.* at 661.  From September 2007 through the date last insured, plaintiff's treatment notes reflect six other instances in which either plaintiff reported feeling depressed and anxious or a physician observed signs of depression.  *See id.* at 653, 710-11, 731, 739, 827.  Thus, although far from overwhelming, there is some evidence that suggests that Dr. Li's opinion may have some probative value.

Accordingly, the ALJ's failure to address Dr. Li's opinion was in error.

**B.**     **The ALJ Improperly Rejected the Opinion of Dr. Nicholas Lin**

Plaintiff argues that the ALJ improperly rejected the opinion of examining physician, Dr. Nicholas Lin, concerning pulmonary irritants.  P. Mem. at 7-9.  Specifically, plaintiff contends that the ALJ failed to provided specific and legitimate reasons why he rejected Dr. Lin's opinion that plaintiff must avoid areas with smoke, fumes, dust, pollens, and chemicals.  *Id*.

The ALJ found that plaintiff "should avoid *concentrated* exposure to pulmonary irritants such as dusts, fumes, gasses, and odors."  AR at 24 (emphasis added).  In reaching her RFC determination, the ALJ gave significant weight to Dr. Lin's findings and opinion, as well as the opinions of the State Agency physicians.  *Id.* at 35.  On February 16, 2007, Dr. Lin examined plaintiff and noted

that plaintiff suffered from migraine headaches, bronchial asthma, and sinusitis. *Id.* at 602. Dr. Lin opined, inter alia, that plaintiff was to "avoid areas with smoke, fumes, dust, pollens, and chemicals." *Id.* at 603. One State Agency physician, Dr. K.T. Vu, disagreed with the environmental limitations while another State Agency physician, Dr. D. B. Rose, agreed with Dr. Lin. *See id.* at 609, 645.

The ALJ noted that Dr. Lin had the opportunity to examine plaintiff, and the State Agency physicians "basically agreed" with Dr. Lin's opinion that the record lacked objective findings to show that her symptoms were as severe or as frequent as she alleged. *Id.* But although the ALJ gave significant weight to Dr. Lin's opinion, she did not wholly adopt each opined limitation. In this instance, the ALJ found that plaintiff only needed to avoid "concentrated exposure" to pulmonary irritants, as opposed to Dr. Lin's opinion that plaintiff avoid any exposure to pulmonary irritants.[2] As such, there is a conflict between the ALJ's and Dr. Lin's opined limitation with regard to pulmonary irritants. The ALJ clearly allows for exposure to some pulmonary irritants so long as it is not "concentrated exposure," while Dr. Lin opined that plaintiff avoid any exposure. The ALJ did not provide a specific and legitimate reason for rejecting Dr. Lin's opinion.

Accordingly, the ALJ improperly rejected Dr. Lin's opinion regarding pulmonary irritants.

C.  **The ALJ's RFC Determination Is Supported by Substantial Evidence**

Plaintiff argues that the ALJ's RFC determination is unsupported by substantial evidence. Specifically, plaintiff argues that the ALJ improperly rejected a treating physician's opinion that he be restricted from prolonged

---

[2] Although Dr. Lin did not explicitly state that plaintiff should avoid any exposure to pulmonary irritants, this court finds that avoidance of all pulmonary irritants is a reasonable interpretation of Dr. Lin's opinion.

10

gripping, pushing, and pulling in his left wrist. P. Mem. at 9-11. Plaintiff contends that the ALJ improperly gave greater weight to Dr. Raymond K. Zarins, an agreed medical evaluator, and to Dr. Lin, neither of whom properly considered all of plaintiff's impairments. *Id.* The court disagrees.

The ALJ determined that plaintiff had the RFC to perform light work with the following limitations: lift/carry twenty pounds occasionally and ten pounds frequently; stand/walk/sit six hours out of an eight-hour workday with regular breaks; alternate positions at one-hour intervals for one to five minutes at her workstation; occasionally kneel, stoop, crawl, crouch, and climb ramps and stairs; and frequently use the left non-dominant hand for gross and fine manipulations. AR at 24. Plaintiff was restricted from: climbing ladders, ropes, or scaffolds; exposure to unprotected heights and dangerous moving machinery; concentrated exposure to pulmonary irritants such as dusts, fumes, gasses, and odors; and prolonged exposure to bright or glaring sunlight or frequent blinking lights due to migraines. *Id.* Finally, due to symptoms of depression, plaintiff required a workplace free of fast paced production requirements or assembly line work involving a conveyor belt. *Id.*

In reaching this RFC assessment, the ALJ relied on the opinions of Dr. Soheil Aval, Dr. Zarins, and Dr. Lin, as well as the objective medical evidence. *See id.* at 24-35. The ALJ gave no weight to Dr. Steiger's opinion that plaintiff was "temporarily totally disabled" under worker's compensation law because a finding of disability under worker's compensation law requires different criteria than a finding of disability under the Social Security Act. *Id.* at 33; *see* 20 C.F.R. § 404.1504. The ALJ also gave little weight to Dr. Steiger's opinion that plaintiff should avoid prolonged neck movement, very heavy pushing/pulling, and repeated bending/stooping because such limitations were not supported by the record and Dr. Aval disagreed with these limitations. *Id.*

Substantial evidence supports the ALJ's decision. With respect to the left wrist specifically, ALJ relied on the objective medical evidence and the opinions of three examining physicians. *See id.* at 33. The ALJ noted that plaintiff had not received any recent treatment on his left wrist and the January 2007 x-rays only showed mild degenerative changes. *Id*. at 33, 621. Other tests were also either normal or mild. Diagnostic studies from December 2004 showed no abnormalities. *Id*. at 566. An August 2005 x-ray showed a normal left wrist and hand. *Id.* at 516-17. A December 2009 electromyogram/nerve conduction study revealed evidence of a slight degree of left median sensory neuropathy at or distal to the wrist line. *Id*. at 1044.

In addition, the ALJ noted that Dr. Aval, Dr. Zarins, and Dr. Lin opined that plaintiff did not require any restrictions pertaining to the left wrist. *Id.* at 33. In July 2005, Dr. Aval, a qualified medical evaluator, examined plaintiff and found no gross abnormalities in the left wrist, no tenderness, and a negative Phalen's sign, Finkelstein's sign, and Tinel's sign. *Id.* at 525-56. Plaintiff also registered no grip strength on the left hand, leading Dr. Aval to opine symptom magnification as it was medically improbable for plaintiff to be unable to register any readings during use of the Jamar dynamometer. *Id.* at 525-26, 532. In August 2005, Dr. Zarins observed tenderness over the dorsal aspect of the left hand and reduced grip strength, but both the Tinel's sign and Phalen's test were negative and plaintiff's x-rays were normal.[3] *Id.* at 475-76, 516. Dr. Zarins also believed

---

[3] Dr. Zarins's 2010 supplemental opinion does not help plaintiff. On February 3, 2010, Dr. Zarins submitted a Supplemental Agreed Medical Evaluation in which he explained that plaintiff displayed signs of carpal tunnel syndrome as of November 10, 2009, but because plaintiff did not have carpal tunnel syndrome in August 2005, the current condition was unrelated to work. AR at 760. Dr. Zarins's opinion in no way affects his 2006 opinion that plaintiff did not have carpal tunnel syndrome and had no manipulative limitations in the left wrist at that time.

that plaintiff was not "putting forth a full effort" during the grip strength test. *Id.* at 463. In February 2007, Dr. Lin found no evidence of tenderness to palpation of the wrists, no evidence of Heberden's and Bouchard's nodes, and a normal range of motion, and also opined that plaintiff had no manipulative limitations. *Id*. at 601.

Two physicians reached a different conclusion from Dr. Aval, Dr. Zarins, and Dr. Lin. Dr. Ralph Steiger, a physician retained in plaintiff's worker's compensation case who treated plaintiff from October 2004 through the date last insured, observed that plaintiff had weaker grip strength in her left hand and positive Finkelstein's, Phalen's, and Tinel's tests. *See id.* at 558, 574, 585. Dr. Steiger diagnosed plaintiff with de Quervain's tendinitis and treated plaintiff with a wrist brace. *Id*. at 498, 560. Dr. Steiger also opined that although plaintiff's 2004 electrodiagnostic studies were negative for carpal tunnel syndrome, she presented classical findings of carpal tunnel syndrome. *Id.* at 754-55. As such, Dr. Steiger opined that plaintiff should be precluded from prolonged, gripping, pushing, or pulling in the left wrist. *Id*. at 561. In December 2004, Dr. Vance Johnson observed that plaintiff had a positive Tinel's and Phalen's signs, positive Finelstein's test, decreased grip strength, and full range of motion, and despite normal results from nerve conduction tests, he also diagnosed plaintiff with carpal tunnel syndrome. *Id.* at 565-66.

Although there is evidence supporting carpal tunnel syndrome and restrictions in the left wrist during the insured period, there is also substantial evidence to support the ALJ's determination. Because the evidence can reasonably support either affirming or reversing the decision, the court must accord deference to the ALJ and may not substitute its own judgment. *Aukland*, 257 F.3d at 1035.

As for the ALJ's RFC determination as a whole, there is substantial

evidence to support it.[4]  Plaintiff's argument appears simply to be that Dr. Zarins and Dr. Lin failed to consider plaintiff's overall condition and all her impairments, specifically, her asthma, migraine headaches, sinusitis, depression and anxiety.  P. Mem. at 10-11.  As an initial matter, it is the province of the ALJ, not the physician, to consider all of a claimant's impairments in order to reach a disability determination.  20 C.F.R. § 404.1527(d)(1).  Here, the ALJ discussed Dr. Franco's treatment notes concerning, inter alia, plaintiff's asthma, headaches, and depression, as well as various diagnostic tests.  *See* AR at 30, 32.  The ALJ also noted that plaintiff had reported migraine headaches, asthma, and sinusitis to Dr. Lin.  *See id.* at 34.  The ALJ's RFC determination clearly reflects her consideration of these impairments as she specifically included limitations related to them.  *See id.* at 24.

      Moreover, Dr. Zarins and Dr. Lin conducted extensive and appropriate examinations.  Dr. Zarins, an orthopedist, was first retained in 2005 to evaluate plaintiff's alleged workplace injuries.  *Id*. at 470.  Dr. Zarins conducted a thorough examination of those purported injuries and specifically reported that plaintiff presented an "extraordinarily complex case" that required the evaluation of multiple body parts and conditions.  *Id*.  Dr. Zarins noted that plaintiff complained of migraine headaches but medication helped to alleviate the pain.  *Id.*  Dr. Lin also performed a comprehensive examination that included both a full physical and neurologic examination, and noted plaintiff's complaints of headaches and asthma.  *Id.* at 598-603.  Plaintiff reported that her headaches were alleviated with medication and Dr. Lin opined limitations relating to plaintiff's asthma.  *Id.* at 599, 603.  Both Dr. Zarins's and Dr. Lin's opinions reflect that they considered all

---

   [4]  Other than the left wrist limitation, plaintiff does not specify the alleged erroneous limitations and/or omissions in the ALJ's RFC determination except that the errors are related to her asthma, migraine headaches, sinusitis, depression, and anxiety.  *See* P. Mem. at 9-11.

of plaintiff's impairments.

Accordingly, without considering the errors discussed above, the ALJ's RFC determination is supported by substantial evidence.  Given the errors found above, however, the ALJ may need to revise plaintiff's RFC after addressing Dr. Li's opinion and reconsidering Dr. Lin's opinion concerning pulmonary irritants.

## V.
## REMAND IS APPROPRIATE

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings turns upon their likely utility).  But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand is appropriate.  *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, as set out above, remand is required because the ALJ failed to address Dr. Li's opinion and improperly rejected Dr. Lin's opinion concerning pulmonary irritants.  On remand, the ALJ shall:  consider the opinion of Dr. Li and either credit her opinion or provide clear and convincing reasons supported by substantial evidence for rejecting it; and reconsider Dr. Lin's opinion concerning pulmonary irritants and either credit it or provide specific and legitimate reasons supported by substantial evidence for rejecting it.  The ALJ shall then proceed through steps four and five to determine what work, if any, plaintiff is capable of

performing.

## VI.

## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: June 12, 2014

_____
SHERI PYM
United States Magistrate Judge